FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 27, 2022

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULIANNA S.,[1] <br><br>      Plaintiff, <br><br>   v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>      Defendant. | No.  4:21-cv-5121-EFS <br><br> **ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR PAYMENT OF BENEFITS** |

   Plaintiff Julianna S. appeals the denial of benefits by the Administrative Law Judge (ALJ). For the reasons stated below, the ALJ erred when weighing the medical opinions and evidence. Because the evidence clearly supports a finding of disability, the Court remands for payment of benefits.

---

[1] To protect the privacy of the each social-security plaintiff, the Court refers to them by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] If the claimant is engaged in substantial gainful activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[6] If the claimant does not, benefits are denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[9] If an impairment or combination of impairments

---

[2] 20 C.F.R. § 416.920(a).

[3] *Id.* § 416.920(a)(4)(i).

[4] *Id.* § 416.920(b).

[5] *Id.*

[6] *Id.* § 416.920(a)(4)(ii).

[7] *Id.* § 416.920(c).

[8] *Id.*

[9] *Id.* § 416.920(a)(4)(iii).

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] 20 C.F.R. § 416.920(d).

[11] *Id.* § 416.920(a)(4)(iv).

[12] *Id.*

[13] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[14] 20 C.F.R. § 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

If there is medical evidence of drug or alcohol addiction, the ALJ must then determine whether drug or alcohol use is a material factor contributing to the disability.[17] If the remaining limitations without drug or alcohol use would not be disabling, disability benefits are not awarded.[18]

## II.    Factual and Procedural Summary

On February 1, 2017, Plaintiff filed a Title 16 application.[19] Her disability claim was denied initially and on reconsideration.[20] An administrative hearing was held before ALJ Marie Palachuk, who took testimony from Marian Martin, Ph.D., who was the testifying medical expert, and from Plaintiff about her conditions and symptoms.[21] After the hearing, the ALJ issued a decision denying Plaintiff's disability application.[22] Plaintiff sought review by the Appeals Council, which remanded the matter back to the ALJ to consider the report prepared by Philip

---

[17] 20 C.F.R. § 416.935(a).

[18] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[19] AR 278–83.

[20] AR 150–53, 159–65.

[21] AR 49–83.

[22] AR 124–43.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

Barnard, Ph.D., to reconsider the nonmedical opinion of John Robinson, Ph.D., and to obtain additional evidence.[23]

On remand, the ALJ conducted a telephonic hearing and took additional testimony from Plaintiff about her conditions and symptoms.[24] The ALJ again denied Plaintiff's disability application, finding:

- Step one: Plaintiff had not engaged in substantial gainful activity since January 23, 2017, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: depression, anxiety, marijuana dependence, chronic back pain/degenerative disc disease, and right hip labral tear (status post arthroscopic repair surgery).

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with the following psychological limitations:

  > She is able to understand, remember, and carry out simple, routine, repetitive tasks and instructions. She is able to maintain concentration, persistence, and pace on simple, routine tasks for two-hour intervals between regularly scheduled breaks. She needs to be in a predictable environment with seldom changes, no exercise of judgment,

---

[23] AR 144–49.

[24] AR 84–95.

> no fast-paced production rate of pace, no public interactions, and no more than superficial interactions with coworkers (defined as non-collaborative/no teamwork). She needs to be dealing with things rather than people.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as garment sorter and cannery worker.[25]

In reaching her decision, the ALJ gave:

- significant weight to the reviewing opinions of Marian Martin, Ph.D., and Andrew Forsyth, Ph.D.

- little or limited weight to the reviewing opinions of John Robinson, Ph.D., JD Fitterer, M.D., and Aaron Burdge, Ph.D.; the examining opinions of N.K. Marks, Ph.D., Philip Barnard, Ph.D., and David Morgan, Ph.D.; and the treating opinions of Julie Raekes, M.D., and Heather Ramirez, MSW.[26]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were

---

[25] AR 13–38.

[26] AR 26–29.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

inconsistent with the medical evidence and other evidence.[27] And the ALJ gave some weight to Plaintiff's mother's lay statements.[28]

Plaintiff requested review of the ALJ's second decision by the Appeals Council, which denied review.[29] Plaintiff timely appealed to the Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[30] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[31] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the [entire] record."[33]

---

[27] AR 24–26.

[28] AR 29.

[29] AR 1–6.

[30] 42 U.S.C. § 405(g).

[31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[32] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[33] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring the court to weigh "both the evidence

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Further, the Court may not reverse an ALJ decision due to a harmless error.[34] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[35]

## IV.    Analysis

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred by rejecting the opinions of the treating medical professionals Dr. Raekes and Ms. Ramirez. As discussed below, the Court agrees.[36]

### 1.    <u>Standard</u>

When Plaintiff filed her disability application, medical opinions were assessed depending on the nature of the medical relationship the claimant had with the medical provider. For instance, a treating physician's or evaluating physician's opinion may be rejected only for "clear and convincing" reasons if it is not contradicted by another physician's opinion, or if it is contradicted by another

_____

that supports and the evidence that detracts" from the ALJ's decision) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[34] *Molina*, 674 F.3d at 1111.

[35] *Id.* at 1115 (cleaned up).

[36] Because the ALJ's decision to afford little weight to Dr. Reakes' and Ms. Ramirez's opinions is not supported by substantial evidence and this error is consequential, the Court need not address Plaintiff's remaining arguments.

physician's opinion, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[37] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source may be rejected for specific and germane reasons supported by substantial evidence.[38]

      2.   <u>Dr. Raekes</u>

     Since at least 2016, Plaintiff has been treated by Dr. Raekes on about a monthly basis. Dr. Raekes completed three medical opinions, two in June 2019 (a Medical Report and a Physical Functional Evaluation) and the other in January 2021 (a Medical Report), which included very limiting work restrictions.[39] The ALJ gave little weight to these opinions.[40]

     Because Dr. Raekes' limiting work restrictions were contradicted by Dr. Fitterer's opinion that Plaintiff had no severe physical limitations and

---

[37] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

[38] *Molina*, 674 F.3d at 1111. The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[39] AR 1368–73, 1564–66.

[40] AR 28.

Dr. Martin's more mild non-exertional work restrictions, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Raekes' opinions.[41]

The ALJ stated that she discounted Dr. Raekes' 2019 opinions because they were contradictory and were not supported by the objective medical evidence.

a.   *The 2019 opinions were consistent*

First, the ALJ discounted Dr. Raekes' 2019 opinions because they were contradictory—and extreme—opinions. An ALJ may discount a medical opinion if it is internally inconsistent or inconsistent with the physician's own medical notes.[42] Here, Dr. Raekes' 2019 Physical Functional Evaluation opinion said that Plaintiff could sustain sedentary work and that she would be off task for 30% of the workday, while the 2019 Medical Report opinion limited Plaintiff to not lifting objects that weighed two pounds and no standing or walking, i.e., she was "Severely limited."[43] The ALJ accurately summarized Dr. Raekes' opined limitations but these opined limitations are not inconsistent with each other when read in the context of each form's specific questions.

For instance, as to the first purported inconsistency between being able to perform sedentary work *and* being off task for more than 30% of the workday,

---

[41] *See Molina*, 674 F.3d at 1111.

[42] 20 C.F.R. 416.927(c)(3), (4). *See Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017).

[43] AR 1368–73.

these questions pertain to two different abilities: Plaintiff's exertional and non-exertional abilities. Dr. Raekes' sedentary-work opinion was based solely on Plaintiff's exertional abilities while the off-task question required Dr. Raekes to consider Plaintiff's ability to remain on task during a 40-hour workweek "[b]ased on the cumulative effect of all limitations."[44] The off-task question required Dr. Raekes to consider *all* of Plaintiff's limitations—both exertional and non-exertional. It was therefore not inconsistent for Dr. Raekes to opine that Plaintiff could physically perform sedentary work but be off task for more than 30% of her workday when considering her anxiety, pain symptoms, and other mental health symptoms.[45]

    As to the second purported inconsistency, the Physical Functional Evaluation and the Medical Report forms defined light work, sedentary work, and severely limited differently. The Medical Report[46] stated:

---

[44] AR 1370.

[45] *See Lester*, 81 F.3d at 829–30 (noting that, for claimant with chronic pain syndrome and affective disorder, the consequences of the physical and mental impairments were inextricably linked and the Commissioner "erred as a matter of law in isolating the effects of [the claimant's] physical impairment from the effects of his mental impairment").

[46] AR 1369.

____ Light work:   Can lift 20 pounds maximum and frequently lift and/or carry up to 10 pounds.  Even though the weight lifted may be negligible, light work may require frequent walking or standing, or involves sitting most of the time with occasional pushing and pulling of arm and/or leg controls.

____ Sedentary work:  Can lift 10 pounds maximum and frequently lift and/or carry articles such as dockets, ledgers, and small tools.  Although a sedentary job involves sitting, a certain amount of walking and standing may be necessary.

Severely limited:  Unable to lift at least 2 pounds or unable to stand and/or walk.

In comparison, the Physical Functional Evaluation[47] stated:

☐ **Light work**      Able to lift 20 pounds maximum and frequently** lift or carry up to 10 pounds, able to walk or stand six out of eight hours per day, and able to sit and use pushing or pulling arm or leg movements most of the day.

☑ **Sedentary work**  Able to lift 10 pounds maximum and frequently** lift or carry lightweight articles. Able to walk or stand only for brief periods.

☐ **Severely limited**  Unable to meet the demands of sedentary work.

Although both forms identify the same lifting and carrying restrictions for sedentary work, the restrictions for walking and standing are different. The Physical Functional Evaluation required that in order to perform sedentary work Plaintiff be able to "walk or stand only for *brief* periods," while the Medical Report required that the person be able to do "a *certain amount* of walking and standing" in order to perform sedentary work.[48] Dr. Raekes apparently deemed this distinction important as she completed these forms on the same day, selecting severely limited on the Medical Report and sedentary work on the Physical

---

[47] AR 1373.

[48] AR 1369, 1373.

Functional Evaluation. Given the differing sedentary-work language and that the forms were completed on the same day, the ALJ had a duty, before discounting these opinions for being contradictory, to ask Dr. Raekes to clarify her opinion.[49]

Moreover, even if there is an inconsistency between being able to walk or stand for "brief periods" and not being able to do a "certain amount" of walking and standing, Dr. Raekes clearly opined that Plaintiff did not have the ability to walk or stand as required for a light work on either of these forms, which was either "frequent walking or standing" (Medical Report) or "walk or stand six out of eight hours per day" (Physical Functional Evaluation).[50]  The ALJ crafted an RFC requiring Plaintiff to perform light work as defined by 20 C.F.R. 416.967(b), which requires Plaintiff to do "a good deal of walking or standing." ability to walk and stand was markedly limited, which is inconsistent with the ALJ's light-work RFC.

   *b.* *Opinions are supported by the medical evidence*

Second, the ALJ discounted Dr. Raekes' 2019 opinions that Plaintiff was severely limited (as defined on the Medical Report), was limited to sedentary

---

[49] 20 C.F.R. § 404.1512.(e); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

[50] AR 1369, 1373.

exertion (as defined on the Physical Functional Evaluation), would be off-task 30% of the workday, and should be restricted to occasional reaching or handling bilaterally—on the grounds that these limitations were not supported by the medical evidence.[51] An ALJ is to consider whether an opinion is supported by the medical evidence.[52] Here, the ALJ did not explain in the paragraph pertaining to Dr. Raekes' 2019 opinions why those opinions were not supported by the medical evidence, but in the next paragraph pertaining to Dr. Raekes' 2021 opinion, the ALJ highlighted certain medical evidence.[53] And similar to Dr. Raekes' 2019 opinions, the ALJ gave little weight to Dr. Raekes' 2021[54] opinion, including that Plaintiff was severely limited, would miss at least 4 days of work per month, and would be off-task and unproductive more than 30% of the workweek, because it was "not consistent with the evidence."[55]

In the paragraph analyzing Dr. Rakes' 2021 opinion, the ALJ mentioned that the "objective evidence as to the claimant's spine was fairly unremarkable (imaging studies of the lumbar spine showed only mild degenerative findings and

---

[51] AR 28.

[52] 20 C.F.R. § 416.927(c)(3–4); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

[53] AR 28.

[54] AR 1564–66.

[55] AR 28.

imaging studies of the thoracic spine were normal," the "physical exams typically showed a normal gait," "although imaging of the right hip showed a small labral tear, this was surgically repaired in August 2019," and Plaintiff was discharged from physical therapy for non-compliance after her surgery.[56] The ALJ erred by largely citing only to the normal findings without discussing the abnormal findings in the record.[57] For instance, Plaintiff's lumbar imaging revealed, in addition to the mild degenerative disc disease, that Plaintiff had L3 and L4 limbus vertebra and thoracolumbar levoscoliosis.[58] And while Plaintiff often had a normal gait, the three comprehensive physical examinations performed by Dr. Baldwin, which Dr. Raekes had requested, elicited lumbar and hip pain and resulting limitations.[59]

---

[56] AR 28.

[57] The ALJ discounted Dr. Raekes' 2019 recommendation that Plaintiff perform no more than occasional reaching or handling bilaterally, as Plaintiff had not been diagnosed with or treated for any impairment likely to impact the upper extremities. However, the ALJ did not consider the impact of Plaintiff's low back condition on Plaintiff's ability to reach. Nonetheless, even if substantial evidence supports the ALJ's decision to discount Dr. Raekes' reaching or handling limitations, substantial evidence fails to support the ALJ's discounting of Dr. Raekes' other exertional and non-exertional limitations.

[58] AR 1366.

[59] AR 1319–23, 1337–40, 1342–45.

Also, during Dr. Baldwin's January 2019 examination, Plaintiff had a positive straight leg raise on her right side both lying and sitting, her lumbar range of motion was limited, and she had sciatic notch pressure and sacroiliac tenderness on her right side.[60] Dr. Baldwin found that Plaintiff had "quite significant symptoms of right lower extremity radiculopathy and that she "clearly has radicular pain in her back and lower extremity."[61] In addition, the ALJ failed to mention that Plaintiff continued to report pain following the surgery to repair the right hip labral tear. And although Plaintiff ceased post-surgery physical therapy, she was upfront with this with Dr. Raekes, who noted in the treatment note, "She quit physical therapy 1 month ago; 'the guy was pushing too hard and it was hurting'; water therapy at Columbia Physical therapy. She does like PT there named Clark and Discussed Mon-Thur; watching dogs from 10-5 p.m."[62]

Another error in the ALJ's analysis of Dr. Raekes' opinions was failing to discuss Plaintiff's physical impairments in conjunction with her pain, medication side effects, and mental-health impairments. For instance, Dr. Raekes based her opinion that Plaintiff would be unable to work on a regular and continuous basis on Plaintiff's "chronic medications, severe anxiety, and untreated bipolar disorder" and noted that Plaintiff's medications limit her activities due to their side effects

---

[60] AR 1338.

[61] AR 1339.

[62] AR 1485.

causing her to be sedentary.[63] Yet, the ALJ did not discuss the impact of Plaintiff's medication side-effects.[64] Likewise, Dr. Raekes explained that Plaintiff would miss 4 or more days per month because "she is limited by her anxiety and bipolar disorder, also by her chronic pain." Similarly, Dr. Raekes supported her 2021 opinion with the following comment:

> [Plaintiff] has been under psychiatric care since kindergarten when diagnosed with ADHD. She did not finish high school or obtain her GED due to anxiety, ADHD, currently with pain disorder, persistent anxiety/depression and suspect bipolar disorder. Adult psychiatric care limited, she continued to participate in counseling.[65]

The ALJ's analysis of the medical evidence fails to adequately explain why Dr. Raekes' medical opinion is unsupported by the medical evidence pertaining to Plaintiff's physical and mental impairments and resulting pain and medication side-effects.

Moreover, similar to Dr. Raekes' findings, each of the treating and examining mental-health professionals opined that Plaintiff was at least markedly limited with learning new tasks, adapting to changes in a routine work setting,

---

[63] AR 1564.

[64] *See* SSR 16-3p (allowing the medical source to consider medication side-effects and requiring the ALJ to consider medication side-effects when assessing the claimant's symptom reports).

[65] AR 1566.

communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and/or completing a normal workday and workweek without interruptions from psychologically based symptoms.[66] The ALJ's analysis of the medical opinions and medical evidence fails to afford meaningful explanation for why the ALJ determined that the reviewing medical opinions, rather than the treating or consultative opinions, were more consistent with the overall medical evidence.

      *c.*   *Conclusion*

      The ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Raekes' 2019 and 2021 opinions. This error was consequential as the vocational expert testified that if Plaintiff is off task and unproductive more than 10% of the workday or workweek, is argumentative or too disruptive in the workplace, or requires frequent reminders to do basic routine tasks, she will be unable to sustain competitive employment.[67]

---

[66] AR 1374–78 (Dr. Barnard); AR 1380–83 (Dr. Burdge); AR 1282–85, 1567–70 (Ms. Ramirez); AR 1384–88 (Dr. Morgan). *See also* AR 58–60 (Dr. Martin finding that Plaintiff's ability to interact with others was moderately to markedly limited).
[67] AR 80–82.

3.    <u>Counselor Ramirez</u>[68]

Since about 2016, Plaintiff received counseling services from Ms. Ramirez. Ms. Ramirez completed a Mental Residual Functional Capacity Assessment in May 2019 and January 2021 and provided counseling notes from their 2018–19 sessions.[69] Ms. Ramirez opined that Plaintiff was moderately, markedly, or severely limited in her capacity to sustain the majority of the listed non-exertional activities over a normal workday and workweek on an ongoing basis.

The ALJ gave little weight to Ms. Ramirez' two opinions. The ALJ gave little weight to the 2019 opinion on the grounds that it was unsupported by Ms. Ramirez's treatment records, which the ALJ deemed to reflect treatment for mild abnormalities, such as improving sleep and communication skills and addressing Plaintiff's concern about the disability hearing, and that Plaintiff routinely presented as engaged with appropriate mood.[70] As to Ms. Ramirez's 2021 opinion, the ALJ discounted the opinion because it was 1) inconsistent with the overall medical record, which the ALJ deemed to reflect routine mental-health treatment that helped alleviate Plaintiff's symptoms, no inpatient psychiatric

---

[68] Heather Ramirez's last name was previously Heather Shoop.

[69] AR 1282–85, 1567–70, 1270–80.

[70] AR 27.

1

2

hospitalizations, and often unremarkable mental status examinations, and 2)

contradicted by Dr. Martin, who reviewed the longitudinal medical record.[71]

3

4

        *a.*     *The 2019 opinion is supported by Ms. Ramirez's treatment notes,*

               *opinion comments, and letter.*

5

6

    The ALJ discounted Ms. Ramirez's 2019 opinion on the grounds that it was

7

unsupported by Ms. Ramirez's treatment records, as they reflected treatment for

8

relatively mild abnormalities and indicated that Plaintiff "routinely presented as

9

engaged with appropriate mood."[72] An ALJ may discount an opinion that is

10

inadequately supported by medical findings and observations.[73] Here, the record

11

contains Ms. Ramirez's 2019 opinion (and 2021 opinion) and treatment summaries

12

from January 2018 to May 2019.[74] During that time frame, Ms. Ramirez generally

13

 

14

[71] AR 28.

15

[72] AR 27.

16

[73] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)

17

(recognizing that a medical opinion may be rejected if it is conclusory or

18

inadequately supported); *Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical

19

opinion is evaluated as to the amount of relevant evidence that supports the

20

opinion, the quality of the explanation provided in the opinion, and the consistency

21

of the medical opinion with the record as a whole); *Crane v. Shalala,* 76 F.3d 251,

22

253 (9th Cir. 1996).

23

[74] AR 1270–80.

met with Plaintiff weekly; however, Plaintiff cancelled some appointments due to pain, difficulties driving, and emergencies or conflicts, or simply did not show for appointments. Although the summaries indicate that Plaintiff was often engaged with appropriate mood, she was also noted as being depressed, being anxious, having a flat mood/affect, being angry and frustrated, and having suicidal ideation.[75] Ms. Ramirez also notes that during counseling sessions they discussed Plaintiff's frustrations with her family and others, her chronic pain, her continued difficulties participating in work or activities she enjoyed, and her impacted sleep.

In her 2019 opinion, Ms. Ramirez added the following comment to explain her opined limitations:

> Julianna struggles with maintaining interpersonal relationships. Due to her mental health struggles, she is unable to perform work/family/social functioning long term. Julianna makes a lot of progress however when triggered Julianna has a hard time controlling her emotional level. Julianna can be extremely successful with positive interactions and when she is able to build a strong relationship with a person. This can be difficult and time consuming which is unrealistic for most employers. Julianna is extremely passionate and does really well with animals, however physically she has been unable to perform which causes a lot of mental health struggles.

This detailed comment and the treatment summaries adequately support Ms. Ramirez's 2019 opined limitations, particularly when this treatment information is considered alongside Ms. Ramirez's comments in 2021 after 2

---

[75] *Id.*

additional years of counseling sessions. In a detailed 2-page letter in 2021,

Ms. Ramirez again discusses Plaintiff's difficulties and explains that although

Plaintiff "has been able to make progress regarding her social interactions with

strangers and short interactions," "she will struggle with daily interactions with

people [in the work environment] causing extreme conflict especially if challenged

in any way."[76]

The ALJ's finding that Ms. Ramirez's 2019 opinion was not supported by

Ms. Ramirez's treatment notes is not supported by substantial evidence.

> b.    *The 2021 opinion is supported by the overall medical record.*

The ALJ discounted Ms. Ramirez's 2021 opinion because it was inconsistent

with the overall medical record. Whether a medical opinion is consistent with the

overall medical record is a factor for the ALJ to consider.[77] The ALJ highlighted

that the record reflects relatively routine mental-health treatment that helped

alleviate Plaintiff's symptoms, that there were no inpatient psychiatric

hospitalizations, and often unremarkable mental-status examinations.[78] However,

the ALJ cherrypicked the normal mental-health findings in the record without

---

[76] AR 1571–72.

[77] 20 C.F.R. § 416.920c(b)(2).

[78] AR 28.

discussing the abnormal mental-health records.[79] For instance, the ALJ failed to address the information contained in Ms. Ramirez's 2021 letter detailing that Plaintiff continues to struggle with regulating her anger and requires flexibility in her treatment plan as she forgets her appointments. Ms. Ramirez acknowledges that Plaintiff's need for crisis intervention has reduced but she struggles with understanding and memory, making it "difficult to build routines and structure in her life."[80] And as noted above, Ms. Ramirez opined, based on her generally weekly interactions with Plaintiff, that Plaintiff would struggle with daily interactions with people at the workplace, particularly if she was challenged. Instead of considering Plaintiff's continued interpersonal and understanding difficulties—difficulties that have persisted since Plaintiff's youth—the ALJ merely focused on the normal findings and improvement.

The record reflects that Plaintiff's behavioral difficulties began as a youth and continued into her young adulthood even though she has had the support of

---

[79] *See Ghanim v. Colvin*, 763 F.3d 1154,1164 (9th Cir. 2014) (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

[80] AR 1571.

her mother, a care manager, and Ms. Ramirez.[81] As one example of Plaintiff's behavioral difficulties, during a psychodiagnostics evaluation with Dr. Marks in 2017, at which Plaintiff was accompanied by her mother and a care manager, Plaintiff was not cooperative, did not put forth effort, and was depressed, agitated, angry, and inappropriate to such extent that Dr. Marks was unable to complete the assessment.[82] In addition, the record contains reports from welfare checks that reveal Plaintiff's mental instability, including suicidal thoughts.[83] The ALJ mentioned "some welfare checks from the local police department and some intermittent outpatient counseling history" but then found that the counseling history did "not reflect any acute abnormality that would warrant greater accommodation than that found in the residual functional capacity."[84] This

---

[81] *See, e.g.*, AR 319 ("Julianna's behaviors have and do impact her ability to [be] successful in the general education classroom environment."); AR 433 ("Julianna struggles with expressing her thoughts and feelings appropriately when she feels upset. She will either use profanity to express her thoughts and/or report that she is feeling ill."); AR 487 ("She has an angry affect and is verbally hostile with even her mother talking to her."); AR 492 (detailing that she will break and hit things when she is upset and that she becomes frustrated easily).

[82] AR 839–42.

[83] AR 293–306.

[84] AR 26.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

unexplained finding is not supported by substantial evidence. The ALJ failed to meaningfully explain why evidence such as Plaintiff's continued contacts with the crisis center and inappropriate behavior when being examined by Dr. Marks, especially when considered along with Ms. Ramirez's counseling notes and letter, fail to support Ms. Ramirez's opined non-exertional limitations.

c.   *Dr. Martin's review of the record does not serve as substantial evidence to discount Ms. Ramirez's opinions.*

Finally, the ALJ discounted Ms. Rameriz's opinion because it is contradicted by the opinion of Dr. Martin, who the ALJ deemed to have reviewed the longitudinal medical record. An ALJ may give more weight to an opinion that is based on more record review and supporting evidence.[85] Here, Dr. Martin reviewed the medical records that were available to her in June 2019; however, she did not review the psychological examination report prepared by Dr. Barnard in August 2018. After conducting a clinical interview and a mental status examination, which included memory, fund of knowledge, and concentration tests, Dr. Barnard opined several marked limitations as to Plaintiff's non-exertional abilities, including that Plaintiff had marked limitations with learning new tasks, adapting to changes in a

---

[85] *See* 20 C.F.R. § 416.920c(b)(2), (c)(2); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion); *Andrews*, 53 F.3d at 1041 (same).

routine work setting, asking simple questions or requesting assistance, maintaining appropriate behavior in the work setting, and completing a normal workday and workweek without interruptions from psychologically based symptoms.[86] Because Dr. Martin did not review Dr. Barnard's opinion, the Appeals Council previously remanded this matter back to the ALJ.[87] Likewise, it was not appropriate for the ALJ to discount Ms. Ramirez's opinion on the basis that Dr. Martin had a more longitudinal medical record review than Ms. Ramirez. Dr. Martin had not reviewed Dr. Barnard's opinion and she did not review any of the records issued after her June 2019 opinion. In comparison, Ms. Ramirez's opinions were based on her personal observations and interactions with Plaintiff beginning since at least 2016 and continuing well after Dr. Martin testified.

**B.    Remand for an Award of Benefits.**

Plaintiff submits a remand for payment of benefits is warranted. The Court agrees.

A district court "ordinarily must remand to the agency for further proceedings before directing an award of benefits."[88] The "credit-as-true" rule, on which Plaintiff relies, is a "rare and prophylactic exception to the ordinary remand

---

[86] AR 1374–78.

[87] AR 144–48.

[88] *Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017).

rule."[89] For the Court to remand for award of benefits, three conditions must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[90]

Each of these elements are met. First, the record is fully developed. The record contains treating and examining opinions, as well as underlying medical records, that indicate when Plaintiff's physical and mental impairments, along with medication side-effects, are considered she has non-exertional limitations that prevent her from sustaining full-time work. In particular, both Dr. Raekes and Ms. Ramirez, who have had longstanding treatment relationships with Plaintiff, opine that Plaintiff is unable to sustain fulltime work. And these treating opinions are consistent with the examining mental-health opinions and the significant behavioral issues observed by Dr. Marks, who determined that Plaintiff "was unable to remain emotionally and behaviorally stable enough to complete the assessment. It is unlikely she could hold down a job."[91] While the record contains evidence of drug and alcohol use, no treating or examining medical professional

---

[89] *Id.*

[90] *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

[91] AR 843.

found that Plaintiff's impairments were primarily the result of a substance use disorder.[92] Likewise, the testifying medical expert did not indicate that Plaintiff's impairments were primarily the result of a substance use disorder.[93] Further administrative proceedings will not serve a useful purpose.

Second, the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Dr. Raekes and Ms. Ramirez.

Third, per the vocational expert's testimony, if Dr. Raekes' and Ms. Ramirez's opinions are credited as true, Plaintiff is unable to maintain competitive employment, as Dr. Raekes and Ms. Ramirez opined that Plaintiff will be off task and unproductive more than 10% of the workday or workweek, be absent more than 1 day a month, and/or will be argumentative and disruptive in the workplace.[94]

Accordingly, remand for a payment of benefits from January 13, 2017, the date the Title 16 disability application was filed, is appropriate.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

---

[92] AR 1373, 1377, 1383.

[93] AR 53–66.

[94] AR 80–82, 1282–85, 1370, 1566–72.

2.      The Commissioner's Motion for Summary Judgment, **ECF No. 19**, is

**DENIED**.

3.      The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

**REVERSING AND REMANDING** the matter to the Commissioner

of Social Security for immediate calculation and award of benefits.

4.      The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 27th day of June 2022.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 29